U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAR 28 2008

ROBERT H. SHEMWELL, CLERK
BY _____
      DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES HOUSTON HICKS | DOCKET NO. 07-CV-2223; SEC. P |
| VERSUS | JUDGE DRELL |
| TIM WILKINSON, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Before the Court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on December 17, 2007, by *pro se* plaintiff James Houston Hicks. Plaintiff is currently incarcerated at Winn Correctional Center ("WCC") in Winnfield, Louisiana. He claims that he has received improper medical care, and he requests one million dollars in compensatory damages, as well as a transfer from Winn to Forcht Wade Correctional Center and neurosurgery for a back condition. Plaintiff originally named as defendants Warden Tim Wilkinson, Dr. Pacheco, Pat Thomas, and unnamed nurses.

Plaintiff was ordered to amend his complaint to allege how each defendant violated his civil rights or to dismiss those claims which could not be cured through amendment. In his amended complaint, Plaintiff asked that Warden Wilkinson, Pat Thomas, and the nursing staff at Winn be dismissed and that Dr. Pacheco be made the "primary defendant" in the suit.

### STATEMENT OF THE CASE

Plaintiff claims that he suffered an injury to his lower back in 2004, prior to his confinement at Winn Correctional. He alleges

that he has a bulging disc, which at times causes compression on his sciatic nerve. Plaintiff underwent x-rays and an MRI following his injury, and was scheduled to have a EMG, but he was unable to undergo that procedure "due to the fact that he had to work to support himself." [Doc. #6] Plaintiff states that he was incarcerated in 2004 and again in 2006, and, as time passed, his back condition worsened. He sought no further medical treatment during the times that he was not incarcerated.

Plaintiff contends that he arrived at WCC on April 2, 2007, at which time he informed the medical staff of his medical condition. On April 5, 2007, Dr. Pacheco issued a duty status for Plaintiff for no heavy lifting, which would expire on October 5, 2007. Plaintiff alleges that such a duty status placed him in "Work Crew 9" which means spending eight hours a day in a fenced yard with a full-size basketball court and four picnic tables. Plaintiff complains that he generally ends up having to sit on the ground because he cannot secure a bench seat every day. [Doc. #6, p.4]

On May 19, 2007, Plaintiff submitted a request form to Pat Thomas for an "inside" duty status because sitting on the ground in the outdoor yard was aggravating his back condition. Pat Thomas advised Plaintiff to speak to the doctor.

On May 28, 2007, Plaintiff submitted a written request to Warden Wilkinson complaining that Plaintiff should not have to pay medical co-payments for each of his sick calls due to the fact that

his back problem is an ongoing/chronic condition.

On July 25, 2007, Plaintiff received a medical "call out" to see Dr. Pacheco. Plaintiff complained about his duty status and Dr. Pacheco advised Plaintiff to fill out a sick-call form. Plaintiff alleges that Dr. Pacheco stated, "If you needed surgery, it would cost too much and D.O.C. would not pay for it." He also claims that Dr. Pacheco advised him that losing weight and exercise would help his back. [Doc. #6, p.5]

Plaintiff submitted another sick call form on August 28, 2007, and he was seen in the infirmary on August 29, 2007. Plaintiff received two Motrin and was charged $3.00 for the visit and $2.00 for the Motrin.

On August 28, 2007, Plaintiff presented a written request to the Warden for an appointment at LSU Medical Center. Plaintiff claims that Warden Wilkinson sent his request to Pat Thomas with a handwritten note, "Pat, get with me on him. Is he set up for a hospital special visit?" On October 18, 2007, Pat Thomas purportedly responded to the Warden, "Has appt coming up at LSU." [Doc. #6, Exhibit 6]

On November 8, 2007, Plaintiff was informed that his appointment at LSU had been cancelled because CCA would be introducing a system whereby LSU doctors could participate in inmate medical exams via closed circuit television. Plaintiff was informed that the system would be implemented in 2008, and that he

would be evaluated at that time. For pain management, Dr. Pacheco prescribed Naproxin, 500 mg, and Flexaril 10 mg twice a day for three weeks.

On December 6, 2007, Plaintiff had another sick call appointment. The nurse gave him two Motrin with a $2.00 charge. Plaintiff also spoke to Dr. Pacheco on a subsequent call-out, and Pacheco informed Plaintiff that he would not be able to refill the Flexaril because of D.O.C. regulations.

Plaintiff had another sick call on January 6, 2008, at which time he saw nurse Greg Williams. The nurse advised that he could only give Plaintiff a three day supply of Motrin to be taken three times per day. He also gave Plaintiff a three day "lay in."

## LAW AND ANALYSIS

### 1. Medical Care

Plaintiff complains that he has been denied adequate medical care, and he requests that neurosurgery be performed on his back. Medical care claims asserted by convicted prisoners, like Plaintiff, are analyzed under the Eighth Amendment. In order to prevail on such claims, convicts must establish that the denial of medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain

... proscribed by the Eighth Amendment," and this includes "indifference ... manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-105 (footnotes and internal quotation marks omitted)); see also Helling v. McKinney, 509 U.S. 25, 35-37 (1993). However, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, even after amendment, Plaintiff has not alleged facts that reveal that he was ever subject to a substantial risk of serious harm. While Plaintiff has a chronic back condition, he has not shown an unnecessary and wanton infliction of pain repugnant to the conscience of mankind by Dr. Pacheco, or any other defendant for that matter. Accepting Plaintiff's allegations as true, the

complaint and amended complaint reveal that, when Plaintiff complained about his back pain, he was afforded medical treatment.

Upon his arrival at WCC, Plaintiff informed the medical staff of his back pain, and he was immediately given a duty status for no heavy lifting, and he has been exempt from working. Plaintiff was treated in the infirmary on numerous occasions, and Warden Wilkinson and Pat Thomas saw to it that an appointment was scheduled for Plaintiff with LSU. The appointment was apparently cancelled due to new Department of Corrections procedures that will provide closed-circuit television examinations with outside physicians. Plaintiff claims that he will be examined via that new technology once it is implemented. In the interim, Plaintiff has received pain management treatment with Motrin and Flexeril, and has been advised to exercise and lose weight.

While Plaintiff's chronic back pain is obviously frustrating and painful, Plaintiff has never been denied medical care for his condition. Plaintiff requests neurosurgery, but no doctor has ever prescribed such surgery for him, and there is no evidence that Plaintiff would even be a candidate for such surgery or that it would remedy Plaintiff's condition.

Plaintiff's injury was suffered years before he arrived at Winn Correctional and he sought little if any treatment prior to his incarceration. While Plaintiff disagrees with the efficacy of the treatment provided at Winn, that is insufficient to state a

claim for deliberate indifference. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

To the extent that Plaintiff complains that he was charged for medical services for an ongoing back condition, he fails to state a claim for which relief can be granted. Plaintiff claims that he should not have to pay the "co-pay" for medical treatment and medication because he has an ongoing medical condition.

First, numerous courts have found that co-pay policies are constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. See, Reynolds v. Wagner, 128 F.3d 166, 174 (3rd Cir.1997) (co-pay policy); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404 (9th Cir.1985) (co-pay policy); Cameron v. Sarraf, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay policy); Johnson v. Dept. of Public Safety and Correctional Services, 885 F.Supp. 817 (D.Md.1995) (co-pay policy); Lewis v. Brazzel, Civil No. 07-1227, 2007 WL 4624017, *5 (W.D.La. Oct.29, 2007); Coleman v. Whitney, 2006 WL 3791316, 2 (E.D.La. 2006)("Programs that require inmates to bear part of their own medical costs remain within constitutional bounds so long as the program does not condition the providing of necessary medical services on an inmate's ability to pay.")

Nothing in the constitution guarantees inmates the right to be entirely free from costs. Moreover, as this Court has stated:

> "The state has a legitimate interest in the efficient use of prison resources. The co-pay Policy accomplishes this goal by applying negative reinforcement to the human tendency to overuse health care services paid for by a third party. This is the very same, common sense reason that many health care systems in this country have implemented co-pay policies. Co-pay policies are designed to encourage universal, but efficient, access to medical care." Hutchinson v. Belt, 957 F.Supp. 97, 100 (W.D.La. 1996).

Most importantly, Plaintiff does not allege that he was ever denied medical care because of an inability to pay. See Watson v. Quarterman, 2008 WL 552447, 13 (S.D.Tex. 2008)("Because inmates are not refused medical care if they cannot afford to pay the $3.00 surcharge, imposition of the co-payment does not result in an unconstitutional denial of care.")

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that all of Plaintiff's claims be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk

of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 28th day of March, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE